**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
TIMOTHY EPIFAN,                          :
                                          :
            Plaintiff,                    :
                                          :        Civil Action No.: 3:11-cv-02591-FLW-TJB
v.                                        :
                                          :
FRANCISCO ROMAN; COUNTY OF                :
SOMERSET; COUNTY OF SOMERSET              :
BOARD OF CHOSEN FREEHOLDERS;              :              **OPINION**
SOMERSET COUNTY PROSECUTOR'S              :
OFFICE; DAVID WHIPPLE; DAVID              :
SHERFFRIN; JOHN CRATER; JOHN              :
GRANAHAN; MARK PELTACK; JOHN              :
FODER                                     :
            Defendants,                   :
—————————————————————

## WOLFSON, United States District Judge

Plaintiff Timothy Epifan ("Epifan" or "Plaintiff") brings this civil rights action asserting claims related to excessive force pursuant to 42 U.S.C. § 1983, and state law claims of assault, battery and negligence. Three groups of defendants move for summary judgment on all counts of the Complaint: first, defendants Somerset County Prosecutor's Office ("SCPO"), Detective David Whipple, Sergeant Francisco Roman, and Sergeant John Fodor; second, defendants Borough of Manville, Manville Police Department ("MPD"), Sergeant James Paterno, Officer David Sherffrin, Lieutenant John Crater, Officer John Granahan, and Chief of Police Mark Peltack; and finally, defendants County of Somerset and County of Somerset Board of Chosen Freeholders (collectively, "the County Defendants"). Plaintiff cross-moves for partial summary judgment against Sgt. Roman on the issue of liability. In addition, in his briefing papers, Plaintiff states that he does not oppose summary judgment as to any of the defendants, other than defendants Sgt.

Roman, Sgt. Paterno, Lt. Crater, Officer Granahan and Det. Whipple (collectively, "Defendants"). Accordingly, summary judgment is **GRANTED** as to the County Defendants, Borough of Manville, Manville Police Department, Sgt. Fodor, Officer Sherffrin and Chief of Police Peltack. As to the remainder of the defendants, for the reasons stated below, summary judgment is **GRANTED** on all counts as to Sgt. Paterno, Lt. Crater, Officer Granahan and Det. Whipple; partial summary judgment is **GRANTED** to Sgt. Roman on Counts Three, Five, Six, Seven, Eight, Nine and Ten, however, summary judgment is **DENIED** as to Counts One and Four based on violations of Plaintiff's Fourth Amendment right, as well as Count Two, Plaintiff's state law claims for assault and battery.  Plaintiff's cross-motion for summary judgment is **DENIED**.

## BACKGROUND and PROCEDURAL HISTORY

The following facts are undisputed unless otherwise noted. In early July 2009, the Motion Picture Association of America ("MPAA") contacted the Somerset County Prosecutor's Office to inform them of its suspicion that Epifan, a twenty-five year old resident of Bridgewater, NJ, would attempt to pirate a movie in the near future. (SCPO Statement of Facts, ¶ 1.)  Indeed, consistent with that suspicion, on July 9, 2009, Epifan posted on an internet message board that he intended to pirate the movie "Bruno" the next day at the Reading Cinema. (SCPO Statement of Facts, ¶ 2.) In order to investigate the matter, the SCPO requested assistance from the Manville Police Department. (SCPO Statement of Facts, ¶ 4.)

On July 10, 2009, MPAA investigators confirmed that Epifan and his brother, Paul Epifan, were in the theater that was screening "Bruno." (SCPO Statement of Facts, ¶ 5.) The officers determined they would arrest the Epifans in the parking lot to avoid arresting them where other movie theater patrons were present. (MPD Statement of Facts ¶¶ 32-33.) Det. Whipple, from the SCPO, and Lt. Crater, from MPD, arrived at the theater together in an unmarked Crown Victoria.

(MPD Statement of Facts, ¶ 26.) Upon arrival, Det. Whipple parked the unmarked Crown Victoria near the south side of the parking lot. (MPD Statement of Facts ¶ 34.) Sgt. Roman, from the SCPO, was also at the scene in an unmarked Chevrolet Impala on the northwest side of the parking lot. (MPD Statement of Facts ¶ 38.) As instructed by Lt. Crater, Sgt. Paterno was in a marked MPD vehicle in the northeast corner of the parking lot, out of the plain sight from the theater exit.  From here, the material facts diverge.

According to Epifan, Lt. Crater and Det. Whipple approached Epifan and his brother as they walked to Plaintiff's vehicle in the parking lot. (P.'s Statement of Facts ¶ 77.) Epifan claims that as soon as the officers approached him, he began to run barefoot through the parking lot. (P.'s Statement of Facts ¶ 78.) As Epifan ran around the parking lot, he claims that Sgt. Roman began pursuing him with his unmarked Chevrolet Impala, driving 22-25 miles per hour. (P.'s Statement of Facts ¶¶ 81, 85.) Epifan further claims that Sgt. Roman intentionally struck him with his Impala, and Plaintiff fell to the pavement. (P.'s Statement of Facts ¶¶ 85-86.) Then, Sgt. Roman subsequently dragged Epifan approximately 10 feet with the police vehicle and ran over Plaintiff's left leg. (P.'s Statement of Facts ¶ 87.) As a result of the collision and the subsequent dragging, Epifan alleges that he has suffered debilitating injuries to his lower limbs. (P.'s Statement of Facts ¶ 97.)

In support of his factual allegations, Epifan has provided several expert reports on these motions. Dr. Lance Markbreiter, an orthopedic surgeon, opines that Epifan's injuries are consistent with assertions that he was hit from behind and then dragged by Sgt. Roman's car as "the wounds are consistent with a road rash from being dragged a distance." (P.'s Statement of Facts ¶ 76.) Epifan further supports his side of the story with an accident reconstructionist expert, Wayne F. Nolte, PhD, P.E.  Dr. Notel conducted an "analysis of the objective speed of the Sgt. Roman

vehicle at the time of the impact," finding that based on the coefficient of friction, Sgt. Roman was more than likely going around 22-25 miles per hour and he could not have been driving less than 5 MPH. (P.'s Statement of Facts ¶ 50-54.) Epifan additionally has provided a report by William C. Wilks, a former police chief for Verona, NJ, which opines, *inter alia*, that Sgt. Roman acted intentionally and that Defendants violated a number of police procedures in effectuating the arrest of Epifan. (P.'s Statement of Facts, ¶¶ 70-73.)

On the other side of the coin, according to Defendants, Det. Whipple and Lt. Crater drove up to Epifan and his brother with the emergency lights and sirens of the Crown Victoria activated. (MPD Statement of Facts ¶ 48.) The officers then exited the car with visible badges, identifying themselves as police officers. Subsequently, Epifan allegedly removed his flip-flops and began running while his brother was handcuffed and arrested. (MPD Statement of Facts ¶ 49; SCPO Statement of Facts ¶ 25.) As Epifan ran, Defendants claim that Plaintiff attempted to delete the "Bruno" footage from his camcorder, which he was holding, causing him to run in an erratic fashion. (SCPO Statement of Facts ¶¶ 26-31.) While Epifan was running, Sgt. Roman began to drive his unmarked Impala towards Epifan with the lights and sirens activated.[1] (SCPO Statement of Facts ¶ 33.) Sgt. Roman claims that he pursued Epifan in his vehicle at 20-25 MPH, but decelerated with the intent to pursue Epifan on foot. (SCPO Statement of Facts ¶ 55.) However, before Sgt. Roman could bring the car to a complete stop, Sgt. Roman avers that the car collided with Epifan while going about 5 MPH. (SCPO Statement of Facts ¶ 56.) Sgt. Roman maintains that Epifan ran into the police car as Epifan continued to evade arrest, colliding with "the front passenger side quarter panel of Sgt. Roman's vehicle." (SCPO Statement of Facts ¶¶ 59-60.)

---

[1]     Epifan claims that he did not hear the sirens as Sgt. Roman approach him in his Impala. (SCPO Statement of Facts ¶ 42-43.)

Immediately following the alleged accidental collision, Sgt. Roman "turned his vehicle to the left away from Epifan to avoid running him over with the right rear tire," and stopped the vehicle approximately ten feet from Epifan. (SCPO's Statement of Facts ¶¶ 73-4.) According to Sgt. Roman, he then got out of the vehicle and walked over to Epifan. Sgt. Roman determined that Epifan need not be handcuffed since Epifan was injured. (SCPO's Statement of Facts ¶ 78.)

Upon seeing the collision, Lt. Crater called the dispatch to request an ambulance; he specifically stated that "we needed an ambulance for a pedestrian struck by a motor vehicle." (MPD Statement of Facts ¶ 56.) Once an ambulance arrived, Epifan was transported to the emergency room at Robert Wood Johnson Hospital for treatment. (SCPO Statement of Facts ¶ 79.)

On April 10, 2010, Epifan pled guilty to pirating in the 4th degree, pursuant to N.J.S.A. 2C:21:21c(5), resisting arrest in the 4th degree, pursuant to N.J.S.A. 2C:29:2a, and hindering prosecution in the 4th degree, pursuant to N.J.S.A. 2C:5-1 and N.J.S.A. 2C:29:3a. (SCPO Statement of Facts, ¶ 85.)

On July 10, 2009, Epifan filed this civil rights Complaint against Defendants following his arrest. (SCPO Statement of Facts, ¶ 85.) In addition to asserting civil rights claims against Defendants pursuant to 42 U.S.C. § 1983 for excessive use of force and deprivation of his other rights under the Fourth, Fourteenth and Eighth Amendment, Plaintiff brings common law tort claims against them. These Counts are listed below:[2]

> Count One:    Section 1983 for deprivation of right to be free from unreasonable search and seizure, to be secure in his person and body, and the use of excessive force in violation of the Fourth and Fourteenth Amendments. In addition, Plaintiff asserts violation of his Eighth Amendment right for inadequate medical treatment.

---

[2]    Plaintiff's Complaint is inartfully pled. Particularly, some of the counts are duplicative and repetitive. The Court will summarize each count as best as it can be interpreted.

Count Two:    State law claims of assault and battery.

Count Three:  Intentional infliction of emotional distress.

Count Four:   Duplicative of Count One, with the addition of unspecified causes of action pursuant to New Jersey law.

Count Five:   Section 1983 claim for conspiracy.

Count Six:    Section 1983 <u>Monell</u> claim for failure to train or supervise against Somerset County, Somerset County Board of Freeholders, Somerset County Prosecutors Office, Borough of Manville, Manville Police Department.

Count Seven:  Duplicative of Count Six with the inclusion of a section 1983 failure to train or supervise claim against Manville Chief Mark Peltack.

Count Eight:  Duplicative of Count Six.  Plaintiff asserts a <u>Monell</u> claim, alleging that defendant governmental entities maintained a policy of "code of silence" to discourage police officers from reporting acts of misconduct and civil rights violation.

Count Nine:   Wrongful conduct by John Does 1-20, ABC Corporations/Business Entities 1-20, ABC Public Entities 1-10.[3]

Count Ten:    State law claim of negligence.

Count Eleven: Request for additional discovery against all defendants.[4]

As indicated above, Plaintiff only opposes summary judgment as to defendants Sgt. Roman, Sgt. Paterno, Lt. Crater, Officer Granahan and Det. Whipple.  Accordingly, the Court need not address Counts Six, Seven, Eight, Nine and Eleven; those claims are dismissed as they are not

---

[3]    Because Plaintiff has failed to identify any specific defendants in lieu of John Does named in the Complaint, Count Nine is dismissed pursuant to Fed. R. Civ. P. 21.  *See Blakeslee v. Clinton County*, 336 Fed. Appx. 248, 250 (3d Cir. 2009) ("Use of John Doe defendants is permissible in certain situations until reasonable discovery permits true defendants to be identified. . . . If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed.") (internal citations omitted).

[4]    A request for additional discovery is not a proper cause of action.  Rather, it appears Plaintiff wishes to invoke Fed. R. Civ. P. 56(d).  However, Plaintiff has failed to comply with the requirements of this rule, and thus, Count Eleven is dismissed.  In fact, Plaintiff does not address the need for additional discovery in his motion papers.

opposed by Plaintiff.  Moreover, Plaintiff does not oppose summary judgment on his common law negligence and intentional infliction of emotional distress claims as to all defendants, and thus, Counts Three and Ten are dismissed.  In addition, although Plaintiff asserts various causes of action under the Fourth, Fourteenth and Eighth Amendments, Plaintiff only opposes Defendants' motions for summary judgment on Counts One and Four based on excessive force, failure-to-intervene and violation of Plaintiff's substantive due process, as well as Count Five, Plaintiff's § 1983 conspiracy claim.  Plaintiff also oppose summary judgment on his state law claim of assault and battery.  I will address each of these counts, in turn.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see also Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson*, Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted); *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir.1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial." Id. at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## II.    Section 1983 Claims

### A.    Conspiracy

In Count Five, Plaintiff alleges that the individual defendant officers, i.e., Sgt. Roman, Det. Whipple, Sgt. Paterno, Lt. Crater and Officer Granahan participated in a conspiracy to violate Plaintiff's civil rights, and they falsified reports in furtherance of that conspiracy. In response, Defendants contend that Plaintiff neither produced sufficient evidence to prove an existence of a conspiracy nor that any reports were falsified in furtherance of a conspiracy.

In order to state a claim of conspiracy pursuant to 42 U.S.C. § 1983,[5] a plaintiff "must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." *Fioriglio v. City of Atlantic City*, 996 F. Supp. 379, 385 (D.N.J. 1998). To survive summary judgment, in that regard, a plaintiff must demonstrate that there is a possibility that the jury can infer from the circumstances that the alleged conspirators had a "meeting of the minds," and thus, reached an understanding to achieve the conspiracy's objective. *Id.* at 386. However, in order to support this inference, "[p]laintiff must prove with specificity the circumstances of the alleged conspiracy, such as those addressing the period of conspiracy, object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." *Id.*

In support of his conspiracy claim, Plaintiff relies on a statement made by Sgt. Roman immediately following his vehicle colliding with Plaintiff, in which he asked Officer Granahan

---

[5]    I note that Plaintiff did not bring a conspiracy claim under §1985.

"did you see him run into me," referring to Plaintiff.  *See* Granahan Dep., T13:3-5.  Based on that statement, Plaintiff claims that the individual officers, collectively, were in an agreement to participate in a conspiracy to cover up police misconduct.  Furthermore, Plaintiff maintains that the individual officers at the scene of the incident falsified a number of reports in furtherance of the purported conspiracy.  In addition to falsifying reports, Plaintiff claims that officers failed to follow the CAR Team procedure, which requires officers to summon crash investigators when "fatal or serious bodily motor vehicle crash occurs."  These acts by the officers, according to Plaintiff, amount to a conspiracy to cover up violations of Plaintiff's civil rights.

However, Plaintiff's assertions are insufficient to establish that Defendants had a "meeting of the minds," or agreed to participate in a conspiracy.  Indeed, mere "allegations [that] do not stem from any personal knowledge of fact, but rather are entirely speculative and conclusory," are insufficient to overcome summary judgment. *Hickson v. Marina Associates*, 743 F.Supp. 2d. 362, 377 (D.N.J. 2010) (granting summary judgment on a § 1983 conspiracy claim where the plaintiff failed to create a genuine dispute of fact as to the agreement and cooperation of the defendants). *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999), *superseded by statute on other ground as recognized by P.P. ex rel Michael P. v. West Chester Area School District*, 585 F.3d 727, 730 (3d Cir. 2009) (affirming a grant of summary judgment where the plaintiff "at most . . . supplied ambiguous allegations and vague inferences that [could not] defeat summary judgment.").

Here, Plaintiff does not present any evidence to show that Defendants agreed to enter into a conspiracy prior to the incident at issue.  Instead, for support of a conspiratorial agreement, Plaintiff relies on Sgt. Roman's statement, in which he asked Officer Granahan if he saw Epfian run into Roman. P.'s Statement of Facts ¶ 92.  Importantly, the statement was uttered after Epfian

and the police vehicle collided.  No reasonable jury could find that the statement itself proves Sgt. Roman's intention to enter into a conspiracy.  And, more compelling, this statement certainly cannot be construed as Officer Granahan's understanding that he would agree to enter into such a conspiracy.  Moreover, there is no evidence to suggest that Det. Whipple, Sgt. Paterno, or Lt. Crater were present at the time this statement was made, nor is there any evidence demonstrating that those officers had agreed to either (1) falsify statements in support of Sgt. Roman's version of the facts, or (2) violate Plaintiff's constitutional rights.  More importantly, that statement does not suggest the officers had agreed -- prior to the incident at issue -- to violate Plaintiff's civil rights. Simply put, Plaintiff has failed to prove that an agreement existed amongst all the individual officers to violate Plaintiff's constitutional rights.  *See Doss v. Osty*, No. 10-3497, 2011 U.S. Dist. LEXIS 68824, at *15 (D.N.J. Jun. 27, 2011) (finding that a failure to show an agreement among the officers to fabricate their version of events is fatal to plaintiff's conspiracy claim).

Similarly, Plaintiff has not established how the purported falsification of reports and other documents related to the arrest and the failure to summon the CAR Team violated his constitutional rights.  Even assuming that Defendants, collectively, agreed to falsify certain reports and documents, and agreed not to summon the CAR Team, Plaintiff's conspiracy claim still fails. Indeed, "'[m]ere allegations of a police cover-up, without allegations of 'actual deprivation of or damage to constitutional rights, fails to state an adequate claim for relief under section 1983." *Green v. Torres*, No. 05-682, 2006 U.S. Dist. LEXIS 61623, at *8 (D.N.J. Nov. 7, 2006). In *Green*, the plaintiff's conspiracy claim was dismissed as it failed to "identify or put forth any evidence establishing how the omission of certain facts from . . . [the police] report caused him any constitutional injury." *Id.*; *see also Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) ("While conspiracies may be actionable under section 1983, it is necessary that there have

been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws."); *Torres v. Allentown Police Dep't*, No. 13-3066, 2014 U.S. Dist. LEXIS 114907, at *24-25 n. 15 (E.D. Pa. Aug. 14, 2014); *Martin v. City of Reading*, No. 12-3665, 2013 U.S. Dist. LEXIS 141152, at *28 (E.D. Pa. Sep. 30, 2013); *Green v. N.J. State Police*, No. 04-0007, 2006 U.S. Dist. LEXIS 553334 at *14 (D.N.J. Aug. 9, 2006) ("Because Green has failed to establish any constitutional injury resulting from the alleged conspiracy to cover-up the excessive use of force, summary judgment for Defendants is warranted."); *Gravely v. Speranza*, 408 F. Supp. 2d 185, 191 (D.N.J. 2006) ("[i]n the absence of an underlying constitutional violation, Plaintiff's claims that Defendants conspired to cover up the use of excessive force must similarly fail . . . [since] [s]ection 1983 does not create a cause of action for conspiracy to deprive a person of their constitutional rights without an actual deprivation of rights protected by the statute."); *Bush v. City of Phila.*, No. 98-0994, 1999 U.S. Dist. LEXIS 11428, at *9 (E.D. Pa. July 16, 1999) ("Cases decided in this court and elsewhere show that conspiracy by police officers to file false reports and otherwise cover up wrongdoing by fellow officers is not in and of itself a constitutional violation. It provides the basis for a § 1983 action only if it results in some constitutional harm to the plaintiff."); *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 832 n.23 (D.N.J. 1993); *DeFeo v. Sill*, 810 F. Supp. 648, 658 (E.D. Pa. 1993).

While Plaintiff, here, claims that as a result of the conspiracy, he "was deprived of his right to be free from unreasonable searches, to be secure in his person and liberty, to be free from harassment intimidation, and excessive force, in violation of his rights under the Fourth and Fourteenth Amendments," he provides no evidence that any of these deprivations were the result of the alleged cover-up. Compl., p. 20, ¶ 10.  There is no evidence, and Plaintiff does not suggest, that prior to the arrest of Epifan, Defendants agreed to violate Plaintiff's civil rights in some way.

In fact, there is no evidence to suggest that anyone was aware ahead of time that there would be a collision in the parking lot of the theater.   Rather, Plaintiff's conspiracy claim is essentially based upon Defendants' alleged agreement to cover up their purported misconduct.  A cover-up, without more, cannot be the basis of a conspiracy claim under § 1983.  Absent any proof of deprivation of civil right as a result of the conspiracy, Plaintiff cannot sustain his § 1983 conspiracy claim.[6] Accordingly, Count Five is dismissed.

### B.      Failure to Intervene

In Counts One and Four,[7] Plaintiff asserts a claim of failure to intervene against Sgt. Paterno, Lt. Crater and Officer Granahan. Plaintiff complains that these officers should be held liable for failure to intervene because they could have taken greater measures to prevent the collision between Sgt. Roman and Plaintiff.  In response, these defendants maintain that they did not have prior knowledge that a collision would occur, nor did they have a reasonable opportunity to intervene.

If an officer "'fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.'" *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (citing *Bryd v. Clark*, 783 F.2d 1002, 1007

---

[6]      Defendants submit an expert report from Francis Murphy explaining that Manville Police Officers have no role in notifying the CAR team given the circumstances of this case.  However, since I find that Plaintiff's proof of a conspiracy is lacking, I need not consider this report.

[7]      To the extent that Plaintiff raises state law claims mirroring his § 1983 claims, those state claims will be addressed in tandem with his federal causes of action.  *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011); *see also Chapman v. New Jersey*, No. 08-4130, 2009 U.S. Dist. LEXIS 75720, at *7 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, No. 09-716, 2010 U.S. Dist. LEXIS 55616, at *15 (D.N.J. Jun. 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 . . . ."); *see generally Hedges v. Musco*, 204 F.3d 109, 122 n.12 (3d Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

(11th Cir. 1986) (holding that a fact finder could find that an officer had a duty to intervene where he observed an inmate being beaten and could have reasonably responded). However, in order for liability to attach on a failure to intervene basis, there must be "a realistic and reasonable opportunity to intervene." *Id.* at 650-51. In that regard, a plaintiff must establish that the defendant "'observed or had reason to know: (1) that excessive force was being used . . . and (2) that he had a realistic opportunity to intervene and prevent the harm from occurring.'" *Roccisano v. Township of Franklin*, No. 11-6559, 2013 U.S. Dist. LEXIS 97526, at *33 (D.N.J. July 12, 2013); *see also Williams v. Fields*, 535 Fed. Appx. 205, 210 (3d Cir. 2013); *Fears v. Beard*, 532 Fed. Appx. 78, 82 (3d Cir. 2013) ("[a]n officer's failure to intervene can be the basis of an Eighth Amendment violation under § 1983 if the officer, upon witnessing another's use of excessive force against a prisoner, had a reasonable opportunity to intervene and simply refused to do so." (internal quotations and citations omitted)).

In the instant matter, Plaintiff has not shown that Officer Granahan, Sgt. Paterno or Lt. Crater had any prior knowledge that the collision was taking place.  Moreover, Plaintiff does not dispute the fact that Officer Granahan did not witness the collision.  Indeed, Officer Granahan testified during his deposition that he did not see the incident occur since he was driving away from the site of the incident in order to make a u-turn.  *See* Granahan Dep., T12:3-T14:2.  And, when he turned his vehicle around, Plaintiff was already on the ground.  *Id.*  Thus, Granahan had no opportunity to reasonably intervene.  Unlike Granahan, both Sgt. Paterno and Lt. Crater witnessed the accident, but, they did not have an adequate opportunity to intervene because there is no dispute that the accident occurred within a matter of seconds.

At the time when Plaintiff collided with Sgt. Roman's car, Lt. Crater was chasing Plaintiff on foot.  *See* Lt. Crater Dep., T66:25-T67:7.  In that regard, Lt Crater testified during his deposition

that while he was running, Sgt. Roman drove past him on his left side. *Id.* Soon after, Lt. Crater saw Plaintiff, who was ten to fifteen yards away, taking a left turn. As Sgt. Roman's car was approaching Plaintiff, Lt. Crater stated that it took a matter of seconds for the collision to happen. *Id.* at T90:21-T91:1. Lt. Crater also stated that he was not aware that the collision was about to occur until seconds before. *See Id.* at T87:3-23. Like Lt. Crater, Sgt. Paterno also witnessed the collision; however, he, too, did not have an adequate opportunity to intervene. Before the collision, Sgt. Paterno was sitting in his vehicle waiting on the side of the theater. *See* Paterno Dep., T39:11-14. While Sgt. Paterno did not witness the beginning of the chase, he heard on his police dispatch that there was a foot pursuit ensuing. *Id.* at T44:15-24. Upon hearing of the chase, Sgt. Paterno attempted to turn his car around to drive towards Plaintiff's location. *Id.* at T45:1-9. As Sgt. Paterno was turning around, he saw Plaintiff running on his right hand side, and an unmarked police vehicle behind Plaintiff. *Id.* At that point, Sgt. Paterno swiftly exited his vehicle to attempt pursuit of Plaintiff on foot. Immediately thereafter, as Sgt. Paterno turned around to the direction of the chase, he witnessed Sgt. Roman's car collide with Plaintiff, which, according to Sgt. Paterno, occurred within a matter of seconds. *Id.* at T49:10-16.

Plaintiff has not presented any evidence to rebut these officers' testimony. Importantly, Plaintiff does not dispute that the incident occurred instantaneously. Indeed, Plaintiff's testimony corroborates this fact; Epifan testified that the incident happened within five seconds. Epifan Dep., T39:13-16. Unlike other failure to intervene cases, the alleged incident of excessive force did not occur over a prolonged period of time. *See Mensinger*, 293 F.3d at 648 ("reviewing the claim, we noted that it was 'apparent that the type of vicious, prolonged attack alleged by Brooks . . . '"); *Kopec v. Tate*, 361 F.3d 772, 777 ("Kopec alleges that Officer Tate placed handcuffs on him that were excessively tight and failed to respond to Kopec's repeated requests for them to be loosened.

He estimates that it took Officer Tate ten minutes to loosen the handcuffs despite the severe pain they were causing and his efforts to secure their release.").

Nevertheless, Plaintiff asserts that the approving "silence" of the officers is sufficient to hold them liable for failure to intervene. Plaintiff relies on *Smith v. Mensinger* for the proposition that silence is an endorsement of the constitutional violation resulting from the illegal use of force. *Smith*, 293 F.3d at 651. However, Plaintiff's reliance is misplaced. In *Smith*, the plaintiff there alleged that corrections officers violently assaulted him for a prolonged period outside the office of the Unit Manager, who was able to see the incident. *Id*. The Third Circuit held that the Unit Manager's "silence" acquiesced the correction officers' illegal conduct. Here, this situation is significantly different from *Smith*. None of the officers had prior knowledge of the collision. As discussed, due to the nature of the collision, the officers could not have reasonably prevented the incident from occurring. Accordingly, I find that Plaintiff fails to prove his failure-to-intervene claim because there is no evidence that Sgt. Paterno, Lt. Crater or Officer Granahan had an adequate opportunity to intervene. This claim is dismissed.

### C.     Excessive Force

While Plaintiff asserts a claim of excessive force against all Defendants, there is no dispute that only defendant Sgt. Roman was involved in the car accident that caused Plaintiff's injury. In fact, there is no evidence connecting any other defendants to the use of excessive force in the instant case. Therefore, Plaintiff's excessive force claim may only be asserted against Sgt. Roman. Accordingly, at the outset, the Court dismisses Plaintiff's excessive force claim against Det. Whipple, Sgt. Paterno, Lt. Crater and Officer Granahan. As to Sgt. Roman, he claims that  Plaintiff was not subject to excessive force because he did not intentionally strike Plaintiff with his police

vehicle.  Sgt. Roman reasons that because the collision was an accident, he is entitled to qualified immunity.

Claims of excessive force are governed by the Fourth Amendment as it "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989).  A police officer's "use of force contravenes the Fourth Amendment if it is excessive under objective standards of reasonableness." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). In order to prove that law enforcement officers used excessive force in effectuating an arrest, a plaintiff must show that there was a seizure triggering the Fourth Amendment. *Clark v. Buchko*, 936 F. Supp. 212, 218 (D.N.J. 1996). Such a seizure occurs where there has been an "an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). The Supreme Court further held in *Brower* that "the Fourth Amendment addresses "misuse of power," not the accidental effects of otherwise lawful government conduct." *Id.* (internal citation omitted). Thus, "[a]s a threshold issue, Plaintiff's claim that law enforcement officers have used excessive force in the course of an arrest of a citizen must therefore [prove] a deliberate act." *Smart v. Borough of Lindenwold*, No. 07-6102, 2010 U.S. Dist. LEXIS 21929, at *3 (D.N.J. Mar. 9, 2010).

State actors, such as police officers, are entitled to a defense of qualified immunity on excessive force claims, "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  In other words, the doctrine of qualified immunity provides that officers may be shielded from liability in a civil rights suit if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Consequently, the qualified

immunity standard is one of "objective legal reasonableness." *Id.* This protection exists "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).

To determine whether a government official is entitled to qualified immunity, a court applies either or both of the two prongs of analysis outlined in *Saucier v. Katz*, 533 U.S. 194 (2001), using the flexible approach endorsed in *Pearson*. *Id.* at 287. One prong asks whether "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. The other prong inquires "whether the right was 'clearly established' at the time of defendant's alleged misconduct.'" *Id.* In other words, "qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232 (citation omitted).

As to the first prong, to determine whether an officer's use of force is objectively reasonable, courts assess a number of factors relating to the objective reasonableness of a defendant's actions, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Kopec*, 361 F.3d at 776-77 (citing *Graham*, 490 U.S. at 396)). Courts should also consider "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.* Indeed, summary judgment is only appropriate in an excessive force case "if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under

the circumstances." *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

As a preliminary issue, in support of his version of the facts, Plaintiff has provided the Court with three expert reports.[8] First, Plaintiff offers the report of Wayne E. Nolte, Ph.D, P.E., an accident reconstruction expert, who conducted a "comprehensive analysis of the objective speed of the Sgt. Roman vehicle at the time of the impact." Mr. Notle concluded the speed of Roman's vehicle at the time of impact.[9] Second, Plaintiff relies on the report of William C. Wilks, a former police chief, who opines, *inter alia*, that Sgt. Roman acted intentionally and that the individual officers violated a number of police procedures in effectuating the arrest of Epifan. Finally, Plaintiff provided a report from Dr. Lance Markbreiter, who was not one of Plaintiff's treating physicians. This expert only evaluated the injuries Plaintiff suffered as a result of the accident and opined on the cause of the injuries.

---

[8]     Plaintiff has additionally attempted to rely upon the Certification of Katherine Hille, an employee at the local bar where several of the individual defendants went a week following the incident at the Reading Cinema. Apparently, Ms. Hille overheard these officers' conversation and Plaintiff relies on Ms. Hille's recount of that conversation to support his version of the facts. However, this Certification cannot be considered on these summary judgment motions for several reasons. First, the Certification provided by Ms. Hille is inadmissible hearsay and its admission is not appropriate under any of the exclusions promulgated in Federal Rule of Evidence 801. Indeed, it is not a "Declarant-Witness's Prior Statement," as the statements made by these officers overheard by Ms. Hille were not under oath, as required by Rule 801(d)(1). Plaintiff also argues that the Certification is admissible under the present sense impression and excited utterance exceptions. However, admission under both of these exceptions is inappropriate because these purported statements were made at the bar a week after the incident, rather than contemporaneously at the scene of the incident or made before there has been time to reflect and fabricate. *U.S. v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998). Accordingly, Ms. Hille's Certification will not be considered.

[9]     Nolte further opines on the intent of Sgt. Roman. It should be noted that such determinations are not for an expert, but are factual determinations for the jury to make at trial. *See Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 409 (D.N.J. 2011); *Bracco Diagnostics, Inc v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 440-41 (D.N.J. 2009).

However, the Court may not consider these reports here as they are not sworn statements in compliance with Third Circuit requirements. In *Fowle v. C&C Cola*, the Third Circuit held that expert reports provided during the summary judgment phase must be "sworn to by the alleged expert," in order to be in compliance with Federal Rule of Civil Procedure 56(e). *Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 .17 (1970)).   While this rule has since been amended, Rule 56(c)(4) contains a similar provision requiring that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The 2010 Amendments to the Rules of Civil Procedure allowed for an exception to this requirement: the admission of unsworn statements, e.g., expert report, may be admitted if they conform to the requirements of 28 U.S.C. § 1746.  In order to do so, the report must be "subscribed in proper form [as set forth by 28 U.S.C. § 1746] as true under penalty of perjury to substitute for an affidavit." *See* Fed. R. Civ. P. 59, Commentary to 2010 Rev. Thus, in order for an expert report to be considered, it must either include a formal affidavit, or be sworn to under penalty of perjury. *See Haas v. 3M Co.*, No. 12-2944, 2014 U.S. Dist. LEXIS 83436, at *66 n.24 (D.N.J. July 24, 2014). None of the proffered expert reports adheres to these requirements. The expert reports at issue in this case are merely attached as Exhibits to the Certification of Plaintiff's attorney. None of the reports are offered in the form of an affidavit or certification, and further, none of the experts signed their reports in accordance with the requirements of 28 U.S.C. § 1746.  In other words, the experts do not state that their reports were made under penalty of perjury. Thus, because these reports are inconsistent with the mandate of Rule 56(c)(4), the Court cannot consider these reports

in determining whether summary judgment is appropriate.  I will now turn to the substantive discussion.

Plaintiff's assertion of excessive force is based on the allegation that Sgt. Roman intentionally hit him with his vehicle in order to effectuate Plaintiff's arrest.  Plaintiff contends that following the collision, Sgt. Roman also intentionally continued to drive his car while dragging Plaintiff across the parking lot in order to exacerbate his injuries.  On the other hand, Sgt. Roman insists that the collision was caused by Plaintiff running into the police vehicle, hitting the passenger side panel of the car.  In response to Plaintiff's assertion of dragging, Sgt. Roman maintains, albeit somewhat inconsistently, that he was not aware that Plaintiff was being dragged and that he did not intend to drag Plaintiff.  Based on these circumstances, it is important to note that there are two instances of excessive force at issue: (1) whether Sgt. Roman intentionally hit Plaintiff when his official police vehicle collided with Plaintiff; and (2) whether Sgt. Roman intentionally dragged Plaintiff following the collision. Sgt. Roman is entitled to qualified immunity only if this Court determines that a reasonable jury could not find Sgt. Roman acted intentionally at any time during the incident.

Sergeant Roman testified during his deposition that when he initially observed Plaintiff fleeing arrest, he began "maneuver[ing] towards the right side of the cinema [where Plaintiff was] . . . through the parking lot area."  Roman Dep. T90:17-23. Sgt. Roman turned on his sirens as he continued to pursue Plaintiff.  *See Id.* T91:1-7.  As he came closer to Plaintiff, he observed Plaintiff "appeared to be maneuvering, doing something with the buttons of the--at that time, [Sgt. Roman] assume[d] it was the video camera."  *Id.* at T92:19-25.  As Sgt. Roman, in his police vehicle, approached Plaintiff, he claims he "was braking . . . coming to a stop so that [he could] exit [his] vehicle and initiate foot pursuit."  *Id.* at T117:19-23.  Moreover, Sgt. Roman testified that his

vehicle "was slightly in motion" when "Mr. Epifan ran into the front right panel." *Id.* at T132:1; T144:15-16.  Upon impact, Sgt. Roman "removed [his] foot from the brake, and . . . [he] think[s] [he] accelerated to get out of the area, was basically one parking spot. It was the distance of one actual parking spot." *Id.* at T135:10-16.  Sgt. Roman has maintained throughout the litigation that the collision was accidental and that no dragging occurred.  *Id.* at T142:12; T145:5-25.

While Plaintiff's version of the facts varies greatly from that of Sgt. Roman, Sgt. Roman, nevertheless, points to Plaintiff's deposition testimony and argues that Plaintiff's own version of the incident cannot prove that Sgt. Roman intentionally hit Plaintiff with his police car.  In that regard, Sgt. Roman focuses on the portion of Plaintiff's deposition where Plaintiff testified that he was hit from behind by Sgt. Roman's vehicle, and that Plaintiff had no knowledge that the police vehicle was behind him.  Based on that version, Sgt. Roman argues that Plaintiff cannot have known, and competently testify, that Sgt. Roman intended to hit Plaintiff.  Indeed, Sgt. Roman's argument is that a mere collision cannot prove intentional conduct.  However, Plaintiff's testimony goes beyond what Sgt. Roman cites.  Plaintiff testified that he was running from Lt. Crater, and while he was running, he was not aware that a police car was chasing him.  *See* Epifan Dep., T52:8-12.  Then, Plaintiff explained that he made a left turn and saw two marked Manville police vehicles in front of him.  At that time, Plaintiff testified that he came to a complete stop so as to surrender.  *Id.* at T35:3-9.  After approximately five seconds, Plaintiff heard the revving of a car engine and that car, driven by Sgt. Roman, struck him.  *Id.* at T39:17-23.  Thereafter, Plaintiff further testified that that he fell to the pavement and was dragged by the vehicle for approximately ten to fifteen feet.  *Id.* at T50:2-23.  After being dragged, the vehicle, according to Plaintiff, ran over his left leg. Id. at T51:3-10.  The testimony of Sgt. Roman and Epifan are clearly contradictory; one establishes intentional conduct, while the other suggests a mere accident.  Therefore, based on the testimony,

if a jury believed Sgt. Roman's version of the facts, it could reasonably find that Sgt. Roman did not intentionally hit Plaintiff.  However, if Plaintiff's version of the facts was found to be credible, a reasonable jury could find that Sgt. Roman used his police care to intentionally strike Plaintiff and then dragged him.[10]

Sergeant Roman, next, argues that Plaintiff's version of the events is not supported by the record.  For one, Sgt. Roman claims that Plaintiff had to know there was a vehicle chasing him because the sirens were activated.  In that regard, Sgt. Roman introduces an audio recording of the conversations between the officers and the dispatch during the chase.  The recording, which the Court had the opportunity to hear, is not clear.  Only the voices of the police officers at the scene were recorded.  In the background, there is a faint sound of a siren.  At best, the recording

---

[10]      Sergeant Roman contends that summary judgment is appropriate as *Heck v. Humphrey* precludes Plaintiff's claim as Plaintiff's convictions, i.e., pirating and resisting arrest, would necessarily be invalidated if he were successful on his excessive force claim.  I find Sgt. Roman's reliance on *Heck* misplaced.  In *Heck v. Humphrey*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Third Circuit has explicitly held that this rule does not apply where "[a plaintiff] charges that [a police officer] effectuated a lawful arrest in an unlawful manner." *Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997). Here, Plaintiff does not challenge that his convictions were invalid, nor would the success on his excessive force claim invalidate his convictions. Instead, Plaintiff's assertion of excessive force, like in *Nelson*, is based on the allegation that Plaintiff's arrest, which caused severe injuries, was effectuated in an intentional and unlawful manner. *Id.*  Furthermore, Sgt. Roman argues that the state judge, who presided over Plaintiff's criminal matter, in his sentencing report, found that Epifan ran into the police vehicle. However, Sgt. Roman overstates the value of that report.  In that report, while the state judge states that Epifan "ran into a police vehicle," *see* Judge Armstrong's Reason for Sentence, p. 3, that statement was merely made in connection with Epifan's sentencing. That Epifan ran into the police vehicle was not admitted to by Plaintiff during his plea.  As such, the sentencing report does not have preclusive effect under *Heck* because Plaintiff did not admit to any of the facts relating to the collision.  Indeed, the fact that Plaintiff ran into the police car is not necessary for his convictions of evading arrest, pirating and hindering prosecution.  It follows that if Plaintiff was intentionally hit by Sgt. Roman, his convictions would not be invalidated.  I reject Sgt. Roman's *Heck* arguments.

demonstrates that a siren was activated.  The recording does not indicate which police car's siren was activated, and it cannot conclusively prove that Plaintiff was not aware that such a siren was activated at the time of the chase. [11]  Furthermore, while Sgt. Roman claims that Plaintiff could not have heard the revving of an engine behind him because of the sound of the siren, this recording does not establish that the siren would drown out the sound of an engine.  Indeed, what Sgt. Roman requests this Court to do is to discredit Plaintiff's testimony based on an unclear audio recording.  This is not permissible on a summary judgment motion because the Court's role is not to make credibility determinations.  That is reserved for the factfinder. *See Suarez v. City of Bayonne*, 566 Fed. Appx. 181, 186 (3d Cir. 2014)("[t]he District Court's grant of summary judgment amounted to a determination that Suarez's deposition testimony was not credible and that the evidence in the Detectives' favor outweighed that in favor of Suarez, two determinations that it was not permitted to make at summary judgment.").

Sergeant Roman also relies upon the depositions of the other individual officers at the scene, as well as the numerous police reports that were filed following the arrest of Plaintiff to discredit Plaintiff's testimony.  Sgt. Roman additionally attempts to supplement his version of the facts with photographic evidence of the damage to his vehicle. Each individual officer's testimony and police report will be analyzed in order to weigh their probative value.

---

[11]     Sgt. Roman relies on *Scott v. Harris,* 550 U.S. 372 (2007), for the proposition that when a video contradicts a plaintiff's version of events, summary judgment would be appropriate. However, there is no video here, and this Court finds that the audio recording in question does not "utterly discredit" Plaintiff's testimony.  The audio, on its own, provides little insight into the incident as it occurred, except to corroborate that there was a collision between a police car and Epifan, and the faint sound of a siren.  Dispatch Audio 00:24-00:53.  This type of evidence does not amount to a "smoking gun" with which *Scott* dealt.  *See Scott,* 550 U.S. at 380 (granting summary judgment where video evidence of a police chase "utterly discredited" the plaintiff's version of facts).

Having reviewed the testimony of the officers on the scene, I do not find that they provide clarity as to the details of the collision. First, the testimony of Officer Granahan and Det. Whipple is not helpful to this Court in determining the relevant facts surrounding the collision as neither officer witnessed the collision, and thus, they cannot testify firsthand as to how the collision occurred. *See* Granahan Dep. T14:1-2; Whipple Dep. T40:10-18.  Lt. Crater, who apparently witnessed the collision, claimed that he saw "Timothy Epifan turn left and run into the passenger wheel area of . . . Roman's cruiser." Crater Dep. T67:1-8; *see* Crater's Police Report, p. 3 (Lt. Crater's report states that Epifan ran into the "front passenger side quarterpanel of Sergeant Roman's car.").   But, there is evidence to the contrary.  Aside from Plaintiff's own testimony, which refutes Lt. Crater's version of events, the dispatch recording at one point recorded Lt. Crater's voice stating that "individual was struck by vehicle."  This seemingly contradicts Lt. Crater's own testimony.   Whatever Lt. Crater meant at that time and whether Lt. Crater subsequently changed his version of the events are all issues of fact that have to be resolved at trial.  This Court cannot make these types of factual determinations; doing so would usurp the role of the factfinder.

Furthermore, Lt. Crater's testimony is called into question by Sgt. Paterno's testimony. Indeed, while Sgt. Paterno witnessed the collision, he did not make any statement as to how the collision occurred during his deposition. Instead, he merely stated – after repeated questioning at this deposition -- that "[he] [only] saw the car and Mr. Epifan make contact." Paterno Dep. T52:12-24.  Interestingly, however, Sgt. Paterno's testimony in this regard contradicts his own police report of the incident.  His police report notes that "[he] observed Mr. Epifan collide with the front fender panel of the unmarked police car. After running into the unmarked car Mr. Epifan came to rest on the pavement." *See* Paterno Crash Report, at p. 2.  Such an inconsistency raises an issue of

Sgt. Paterno's credibility, a determination this Court cannot make on a summary judgment motion. Because I find that there is a genuine issue of material fact as to whether Sgt. Roman intentionally used his police vehicle to hit Plaintiff, it would be inappropriate to grant either Sgt. Roman's or Plaintiff's motion for summary judgment on this basis.

Furthermore, even if Plaintiff ran into Sgt. Roman's vehicle, as Sgt. Roman testified, a disputed fact would still exist as to whether Sgt. Roman deliberately dragged Plaintiff following the collision. There is no evidence whatsoever to indicate, either way, that Roman intentionally dragged Plaintiff. None of the officers' testimony focused on the dragging. There are pictures of the scene, submitted by Plaintiff, that tends to show that Plaintiff was indeed dragged by a vehicle. *See* Morello Cert. Exs. T & V. On that point, both Sgt. Roman and Lt. Crater noted at their deposition that the marks on the pavement could likely be drag marks. *See* Roman Dep. T112:8-T113:2; Crater Dep. T118:6-T120:19.) In addition, Plaintiff submitted pictures of his severe injuries that are, at least, visually consistent with injuries that would be caused by dragging.

Sergeant Roman concedes that he "slightly accelerated to get to get out of the area," *see* Roman Dep., T143:3-8, despite insisting that he was not aware Plaintiff was dragged. *See Id.* at T142:11. Without any evidence corroborating Sgt. Roman's position, this issue essentially amounts to a classic example of "he said she said." In that connection, the resolution of this dispute, i.e., whether Sgt. Roman acted deliberately when he continued to drive following the collision, requires "credibility determinations and the weighing of evidence, both functions that are clearly within the province of the jury to decide." *White v. City of Trenton*, No. 06-5177, 2011 U.S. Dist. LEXIS 148335, at *21 (D.N.J. Dec. 27, 2011); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 254 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he

is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Accordingly, whether excessive force was used in effectuating Plaintiff's arrest is an issue preserved for trial, and therefore, both Sgt. Roman's and Plaintiff's motions for summary judgment on the excessive force claim are denied.  I need not engage in the analysis of second prong of the qualified immunity analysis.  As I have discussed, a material factual dispute exists as to whether the Sgt. Roman violated Plaintiff's right to be free from the use of excessive force and from unreasonable seizure. With respect to the "clearly established" prong of the qualified immunity question, "[t]he factors relevant to the excessive force analysis are well-recognized." *Couden v. Duffy*, 446 F.3d 483, 497 (2006). Were the jury to credit Plaintiff's testimony and his evidence, that finding would support the conclusion that Sgt. Roman used excessive force under clearly established law.  *Suarez*, 566 Fed. Appx. at 187.

Finally, in Count One, Plaintiff also asserts a § 1983 claim for excessive force based on an alleged violation of his Fourteenth Amendment right to substantive due process.  In determining the constitutionality of an arrest made by a state official, however, it is well-settled that a § 1983 claim for excessive force is only cognizable under the Fourth Amendment, and in that regard, "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Bergdoll v. City of York*, 515 Fed. Appx. 165, 170 (3d Cir. 2013); *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Thus, Plaintiff's substantive due process claim is dismissed.

## III.    State Law Claims

In Count Two, Plaintiff brings state law claims of assault and battery against Sgt. Roman. Under New Jersey law, "[a] person may be liable for battery if 'he acts intending to cause a harmful

or offensive contact . . . or an imminent apprehension of such contact' and a 'harmful' or 'offensive' contact 'directly or indirectly results.'" *Giovine v. Giovine*, 284 N.J. Super. 3, 34 (App. Div. 1995) (citations omitted), *overruled on other grounds*, *Brennan v. Orban*, 145 N.J. 282 (1996). "A person who acts with the same intent may be liable for assault even if no contact actually results if the victim is placed in 'imminent apprehension' of a harmful or offensive contact." *Id.*

Having already determined that there is a genuine issue of material fact as to whether Sgt. Roman used excessive force, the Court finds that there is also a genuine issue of material fact as to his state law claim of assault and/or battery against Sgt. Roman -- both of which are predicated on Sgt. Roman's alleged use of excessive force. *See Mantz v. Chain*, 239 F. Supp. 2d 486, 507 (D.N.J. 2002) ("Where a police officer uses excessive force in effectuating an arrest, that officer may be liable for assault and battery."); *Hendrix v. City of Trenton*, No. 06-3942, 2009 U.S. Dist. LEXIS 120718, at *13 (D.N.J. Dec. 29, 2009) (denying motion to dismiss assault and battery claims for the same reason the court declined to dismiss plaintiff's claim of excessive force).

Nevertheless, Sgt. Roman argues that he is immuned from Plaintiff's state law claims under New Jersey's Tort Claims Act. First, Sgt. Roman asserts the defenses of pursuit and good-faith immunity pursuant to N.J.S.A. 59:5-2 and N.J.S.A. 59:3-3, respectively.  Pursuant to the New Jersey Tort Claims Act, public entities and public employees are shielded from liability that arises from any injury resulting from "a person resisting arrest or evading arrest." N.J.S.A. 59:5-2(b)(2). This immunity extends to "all injuries arising out of a police pursuit, even those that would not have occurred but for the negligence of the police." *Alston v. City of Camden*, 168 N.J. 170, 177 (2001) (citing *Tice v. Cramer*, 133 N.J. 347, 351 (1993)). Thus, the Act "confers absolute immunity except where the police officer engages in willful misconduct." *Alston*, 168 N.J. at 177.  Similarly,

state actors may claim good-faith immunity pursuant to N.J.S.A. 59:3-3, where "he acts in good

faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. Further, "in order for that

immunity to apply, the public employee must 'establish that [his or her] acts were objectively

reasonable or that [he or she] performed them with subjective good faith.'" *Leang v. Jersey City*

*Bd. of Educ.* 198 N.J. 557, 582 (2009) (quoting *Canico v. Hurtado*, 144 N.J. 361, 365, (1996)). As

with pursuit immunity, there will be no immunity for a public employee if the conduct complained

of constituted . . . willful misconduct." *Id.* (citing N.J.S.A. 59:3-14(a)).

   Having already found that there is a disputed fact as to whether Sgt. Roman's actions were

willful, he is not entitled to these immunities, just as he is not entitled, at this time, to qualified

immunity.  Summary judgment is denied as to Count Two.[12]

---

[12]  For the first time in this litigation, Plaintiff asserts a § 1983 claim based on "state created
danger."  That claim is not pled in the Complaint.  Plaintiff is not permitted to amend or assert new
claims in his summary judgment motion.  *Taylor v. Sanders*, 536 Fed. Appx. 200, 203 (3d Cir.
2013)("[a] plaintiff may not amend his complaint through arguments in his brief in opposition to
summary judgment.").  As such, because this claim is not properly before me, I will not consider
it.

## CONCLUSION

For the above stated reasons, summary judgment is **GRANTED** as to the County Defendants, Borough of Manville, Manville Police Department, Sgt. Fodor, Officer Sherffrin and Chief of Police Peltack.   Similarly, summary judgment is **GRANTED** on all counts as to Sgt. Paterno, Lt. Crater, Officer Granahan and Det. Whipple.   Partial summary judgment is **GRANTED** to Sgt. Roman on Counts Three, Five, Six, Seven, Eight, Nine and Ten, and summary judgment is **DENIED** as to Counts One and Four based on excessive force, as well as Count Two, Plaintiff's state law claim of assault and battery.  Plaintiff's cross-motion for summary judgment is **DENIED**.

DATE: September 29, 2014                                    /s/ Freda L. Wolfson
                                                           Freda L. Wolfson
                                                           United State District Judge